**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PUBLICATIONS INTERNATIONAL, LTD. | ) | Civil Action No. 08-cv-2800 |
| An Illinois Corporation, | ) | |
| | ) | Hon. Judge Guzman |
| Plaintiff, | ) | Hon. Magistrate Judge Cox |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| LEAPFROG ENTERPRISES, INC., | ) | |
| A Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>NOTICE OF MOTION</u>**

To:    Caroline Claire Plater, Michael David Short, Kelley, Drye & Warren LLP, 333 West Wacker Drive, Suite 2600, Chicago, Illinois  60606

PLEASE TAKE NOTICE THAT on Tuesday, July 1, 2008, at 9:30 a.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Ronald A. Guzman or any judge sitting in his stead, in the courtroom usually occupied by him at the United States District Courthouse for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, 60604, and then and there present the attached Motion to Dismiss for Lack of Declaratory Judgment Jurisdiction Under 28 U.S.C. § 2201.

Dated:  June 27, 2008          Respectfully Submitted,

                       /s/Michele S. Katz

Julie A. Katz, Esq. (Illinois Bar No. 6204541)
Michele S. Katz, Esq. (Illinois Bar No. 6273985)
**WELSH & KATZ, LTD.**
120 S. Riverside Plaza, 22nd Floor
Chicago, IL 60606
Tel:      (312) 655-1500
Fax:     (312) 655-1501
E-mail:   jakatz@welshkatz.com

Timothy R. Cahn, Esq. (*appearing pro hac vice*)
**TOWNSEND AND TOWNSEND AND CREW LLP**
Two Embarcadero Center, Eighth Floor
San Francisco, CA  94111-3834
Tel:      (415) 576-0200
Fax:     (415) 576-0300
Email:   trcahn@townsend.com

*Attorneys for LeapFrog Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I herby certify that a true and correct copy of the foregoing NOTICE OF MOTION was electronically filed on June 27, 2008, with the Clerk of the Court using the CM/ECF system which will send notification of such filing:

Caroline Claire Plater
Michael David Short
Kelley, Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, Illinois  60606

_____/s/Michele S. Katz_____
One of the Attorneys for LeapFrog
Enterprises, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PUBLICATIONS INTERNATIONAL, LTD., an Illinois Corporation, | ) ) ) | Case No. 08CV2800 |
| Plaintiff, | ) ) | Judge Guzman Mag. Judge Cox |
| v. | ) ) ) | |
| LEAPFROG ENTERPRISES, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) | |

**LEAPFROG ENTERPRISES, INC.'S MOTION TO DISMISS FOR LACK OF DECLARATORY JUDGMENT JURISDICTION UNDER 28 U.S.C. §2201 AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6);  AND MEMORANDUM OF LAW IN SUPPORT.**

**I.    INTRODUCTION**

Plaintiff Publications International, Ltd. ("PIL") has jumped the gun and brought a declaratory judgment action against Defendant LeapFrog Enterprises, Inc. ("LeapFrog") even though no ripe claim or imminent injury warrants it.  Neither the trademark nor trade secret portions of PIL's Amended Complaint sets forth an "actual controversy" that is sufficiently "concrete" or "definite," nor does the Amended Complaint allege the "actual or imminent harm" that is constitutionally required to support a declaratory judgment action.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 and 772 n.8 (2007); *Teva Pharms, USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336-38 (Fed.Cir. 2007); and *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1013 (N.D.Ill. 2007).

PIL's Amended Complaint alleges nothing more than pre-filing communications between the parties concerning their respective adoption and future intended use of the name "POINGO" for a children's reader pen device.  At no time did LeapFrog ever allege infringement by PIL, threaten an infringement lawsuit, or even demand that PIL not use POINGO.  (*See* Declaration of John A. Hughes, hereafter "Hughes Decl.," ¶8.)  As confirmed by the Amended Complaint's allegations and the attached pre-filing correspondence, the parties directed their communications

at investigating how PIL had come up with a mark that LeapFrog had coined more than a year before. LeapFrog undertook an investigation of these suspicious circumstances based on its belief, expressed in writing to PIL, that PIL **"may"** have misappropriated the term. (Amended Complaint, Exhs. A, C.) Under controlling Seventh Circuit authority, parties are entitled to undertake such investigations and seek information related to possible infringement without triggering jurisdiction for declaratory relief.[1] Moreover, neither party is using POINGO on goods in commerce, a fact that alone renders PIL's claims too speculative for declaratory relief.[2] *See Geisha, LLC*, 525 F. Supp. 2d at 1009-1010.

After PIL filed its original Complaint for Declaratory Judgment, and after LeapFrog wrote PIL counsel to inform them that the Court lacked declaratory judgment jurisdiction over PIL's Complaint, PIL amended its complaint to attempt to allege an affirmative claim under state law. Seeking to avoid outright dismissal of its suit, PIL now alleges that LeapFrog's requests for information about PIL's acquisition of POINGO somehow violated the "Illinois Consumer Fraud and Deceptive Business Practices Act" (815 ILCS 505/2). (Amended Complaint, ¶2.) However, PIL's new claim fails to allege, as it must, that LeapFrog disseminated its allegedly "unfair accusations" to consumers or to the marketplace and, accordingly, also must be dismissed. *See, e.g., Junction Solutions, LLC v. MBS Dev., Inc.*, 2007 US Dist. LEXIS 86953 (N.D. Ill., Nov. 20, 2007).

## II.    FACTUAL ALLEGATIONS

According to the Amended Complaint, PIL publishes children's books and interactive learning products. (Amended Complaint, ¶9.) PIL reportedly developed a "pen-like electronic reader device" that can read and create sound effects when "touched to the surface of a specially made book." (Amended Complaint, ¶11.) At a trade show in February 2008, PIL "introduced"

---

[1]     *See American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376, 379 (7th Cir. 1967) (patent owner "should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head . . . a declaratory judgment suit.")

[2]     According to reports published online, PIL will not even launch such a product until August 2008. *See* <http://www.toydirectory.com/monthly/productsbymfr.asp?id=870.>; <http://abcnews.go.com/Technology/GadgetGuide/Story?id=4364951&page=4>.

its reader device "under the name and mark POINGO." (Amended Complaint, ¶12.) According to PIL's press announcements, it has not yet actually begun to sell a "POINGO" reader device. *See* <http://abcnews.go.com/Technology/GadgetGuide/Story?id=4364951&page=4>. Not having actually used POINGO on any goods in commerce, PIL in March 2008 filed two intent-to-use trademark applications with the United States Patent and Trademark Office ("USPTO").[3] (Amended Complaint, ¶13.) These applications were so recently filed that the USPTO has not even examined them. (Hughes Decl. ¶2, Exh. A.)

After learning that PIL had announced it was going to call the device POINGO, LeapFrog's counsel John Hughes sent a letter on April 7, 2008, informing PIL that, long before PIL's announcement, LeapFrog had been using the POINGO mark internally for its own anticipated reading pen product, and that "PIL's decision to use the same mark may be due to PIL's misappropriation of LeapFrog's confidential and proprietary information." (Amended Complaint, ¶20, Exh. A; Hughes Decl., ¶3.) Neither in Mr. Hughes's April 7, 2008 letter, nor at any other time, did LeapFrog claim infringement or threaten to file suit. (Hughes Decl., ¶8.) LeapFrog did not at any time demand that PIL not use, or cease using, "POINGO" but merely sought information to explain these deeply suspicious circumstances. *Id.* PIL, for its part, does not allege that LeapFrog made any such claims, demands, or threats. As alleged in the Amended Complaint, LeapFrog ultimately chose to call its reader pen device "TAG." (Amended Complaint, ¶19.)

PIL counsel responded in a letter of April 14, 2008, which asked LeapFrog for evidence that it had used "POINGO" but failed to answer LeapFrog's questions concerning how PIL adopted the name. (Amended Complaint, ¶23, Exh. B.) Thereafter, on April 17, 2008, LeapFrog's counsel responded to advise PIL "that the mark POINGO was included in a presentation to one of LeapFrog's retailers at least as early as November 14, 2006, and [that] LeapFrog used the mark internally prior to that date." (Amended Complaint, ¶24, Exh. C.) LeapFrog's counsel then reiterated LeapFrog's request that PIL explain "how and when PIL

---

[3]    An applicant can maintain an intent-to-use application, without actually using the applied-for trademark, for up to three (3) years after issuance of a Notice of Allowance. *See* 15 U.S.C. §1051(b), (d); 3 McCarthy on Trademarks and Unfair Competition, §19:25, at 19-60.

chose the mark" in order "to assure LeapFrog that PIL's use of the mark *did not result from*" misappropriation of LeapFrog's confidential and proprietary information. *Id.* (emphasis added).

At a May 7, 2008, telephone conference requested by PIL's counsel, LeapFrog's counsel again asked for an explanation as to PIL's adoption of a mark that was identical to one that LeapFrog previously had coined and discussed in confidence with select retailers. Counsel noted that this information was so basic that it was the kind of information that would be discoverable. (Hughes Decl., ¶7.) Counsel repeatedly emphasized, however, that LeapFrog had no interest nor intention in initiating litigation and, thus, hoped PIL would provide the explanation voluntarily. (*Id.*) PIL's counsel promised to check with PIL and get back to LeapFrog's counsel. (*Id.*)

PIL's counsel never responded as promised. (Hughes Decl., ¶7.) Instead, PIL filed its original "Complaint for Declaratory Judgment." After receiving the original complaint, LeapFrog's counsel, in a letter dated May 28, 2008, reviewed the facts relating to the parties' prior communications, informed PIL's counsel that there was no declaratory judgment jurisdiction for the complaint, and demanded that PIL voluntarily dismiss it. (Hughes Decl., ¶10, Exh. C.) In response to this letter, PIL filed an Amended Complaint to allege an affirmative claim under the "Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §505/2.)" (Amended Complaint, ¶2.)

Whereas the original complaint sought a judicial declaration that "LeapFrog has no rights in the designation POINGO" (Complaint, ¶24.), the Amended Complaint asks this Court to declare "that LeapFrog does not have senior right [sic] to the mark POINGO." (Amended Complaint, Prayer for Relief, ¶a.) Significantly, PIL does not request a declaration of non-infringement -- nor, for that matter, does the Amended Complaint allege that LeapFrog asserted infringement threats. PIL merely alleged in its original complaint that, if LeapFrog had prior rights, "it would subject PIL to claims for infringement and unfair competition under the Lanham Act." (Complaint, ¶15.) PIL has removed from its Amended Complaint even this tenuous assertion of concern about an infringement claim.

Like the original complaint, the Amended Complaint also seeks a judicial declaration "that PIL did not misappropriate any confidential or proprietary information from LeapFrog." (Amended Complaint, Prayer for Relief, ¶b.) However, PIL nowhere alleges anything concerning how PIL derived the mark "POINGO," nor does it describe what particular conduct PIL requests that this Court determine not to have been "misappropriation." Further, though

claims for misappropriation of proprietary information are creations of state law, PIL's Amended Complaint nowhere indicates under what state law it seeks a federal court declaration of non-misappropriation.  Finally, the Amended Complaint claims that LeapFrog's "unfair accusations aimed at PIL" violate an Illinois statute.  (Amended Complaint, ¶36.)  PIL alleges that these alleged "unfair accusations" ─ supposedly reflected in LeapFrog's correspondence attached to the Amended Complaint -- have had a "chilling effect" on PIL's interest in the business which, in turn, somehow "will lessen consumer choice."  (Amended Complaint, ¶35.)

## III.    ARGUMENT

### A.    Legal Standards Under the Declaratory Judgment Act

Under the Declaratory Judgment Act, a federal court, "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. §2201; *see generally Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1009-1010 (N.D.Ill. 2007).  The requirement that there be an "actual controversy" is equivalent to the case-or-controversy requirement in Article III of the Constitution and incorporates the constitutional doctrines of ripeness and standing.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 and 772 n.8 (2007); *Teva Pharms., USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336-38 (Fed.Cir. 1988); *Geisha*, 525 F. Supp.2d at 1009-10. The declaratory judgment plaintiff bears the burden of showing that a dispute meets the constitutional requirements of ripeness, standing, and actual controversy.  *Geisha*, 525 F. Supp. 2d at 1010.    Moreover, even if declaratory judgment jurisdiction is established, courts nonetheless have substantial discretion to decline to entertain it.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 285 (1995); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987).

In *MedImmune v. Genentech,* the U.S. Supreme Court clarified the standards for determining the existence of a constitutionally required "actual controversy" under the Declaratory Judgment Act.  In *MedImmune*, a patent licensee, who was paying royalties under protest, brought suit for declaratory relief that it owed patentee no royalties.  The Court held that the licensee was not required to cease making payments and invite imminent potential harm when it was clear that the patentee would seek "to enjoin sales if royalties [were] not forthcoming."  *MedImmune*, 127 S.Ct. at 772.  The Court found that an actual controversy

existed because the licensee's harm was sufficiently immediate and real:  it could either continue to suffer the payment of royalties it believed were not owed or defend a certain infringement suit and risk an injunction on its sales.

The *MedImmune* Court, relying on a long line of Supreme Court precedent, confirmed that, to warrant declaratory jurisdiction, a dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interest.'"  *MedImmune*, 127 S.Ct. at 771, *quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  The dispute also must be "'real and substantial'" and "'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *Id.*, *quoting Haworth*, 300 U.S. at 241.  In sum, the Court held that

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.*, *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941);  *see also Geisha*, 525 F. Supp. 2d at 1013 (applying the *MedImmune* Court's test to deny declaratory judgment jurisdiction in a trademark infringement matter).  Recent cases applying *MedImmune* in the patent infringement context have held that, to sustain jurisdiction, a declaratory judgment plaintiff must show "an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Teva Pharm.*, 482 F.3d at 1338, *quoting MedImmune*, 127 S.Ct. at 771.

### B.    Because the Parties' Dispute Is Not "Definite and Concrete," Nor PIL's Purported Threatened Harm "Actual or Imminent," There Is No Declaratory Judgment Jurisdiction Over PIL's Amended Complaint.

Applying these constitutional authorities, this Court lacks jurisdiction over PIL's claims for declaratory relief because the parties' dispute was not at the time of filing (and is still not) definite, concrete, and immediate and because PIL's purported threatened harm was not, and is not, "actual or imminent."  *See Teva Pharm.*, 482 F.3d at 1338, *quoting MedImmune*, 127 S.Ct. at 771 (plaintiff must show "actual or imminent injury . . . that can be addressed by judicial relief").

### 1.    Requests to Investigate Potential Claims Do Not Satisfy "Actual Controversy" Test.

As is plain from the parties' correspondence, at the time PIL filed its complaint the parties were continuing to investigate and discuss the matter of their respective adoption and future intended use of POINGO.  (Amended Complaint, Exhs. A-C.)  LeapFrog wrote PIL in April to say that it believed it had first used the mark "POINGO" and to ask for information as to how PIL had come up with that name.  PIL responded to ask about LeapFrog's prior use, to which LeapFrog replied with relevant information.  LeapFrog's counsel again asked for information about PIL's adoption of POINGO "in order to assure LeapFrog that PIL's use of the mark *did not* result from any such misappropriation." (Amended Complaint, Exh. C.) (emphasis added).  This request for further information was repeated during a subsequent telephone conference requested by PIL's counsel, during which PIL's counsel stated that they would check with their client.  (Hughes Decl., ¶7.)

This course of conduct does not create declaratory judgment jurisdiction.  Many cases have recognized that an intellectual property holder's requests for investigation *do not give rise* to a constitutionally required actual controversy.  For example, the Seventh Circuit Court of Appeals, in *American Needle and Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376 (7th Cir. 1967), denied declaratory jurisdiction despite plaintiff's having received a formal letter (1) stating that plaintiff's product "may conflict" with defendant's patent, (2) noting that others in plaintiff's position had taken licenses from the patentee, and (3) asking plaintiff to submit a sample of the product for the patentee's inspection.  *Id.* at 379.  The Seventh Circuit held that such requests for information do not signal "actual controversies" giving rise to declaratory jurisdiction.  In an oft-quoted holding, the Seventh Circuit observed that "the owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of a defense of an expensive and burdensome declaratory judgment suit alleging invalidity and non-infringement." *Id.* at 379; *see also Dr. Reddy's Laboratories, Ltd. v. Pfizer Inc.*, 2003 U.S. Dist. LEXIS 24367, at * 19, n.9 (D. N.J. July, 8, 2003);  *Wright Medical Tech., Inc. v. Osteonics Corp.*, 914 F. Supp. 1524, 1531 (W.D.Tenn. 1995); and *Davox Corp. v. Digital Systems Int'l, Inc.*, 846 F. Supp. 144, 148 (D.Mass. 1993).

At no time prior to the filing of this action did LeapFrog accuse PIL of infringement, threaten it with a lawsuit, demand that PIL not use POINGO, demand license payments, or even

state unequivocally that PIL misappropriated the name.  (Hughes Decl., ¶8.)  Absent at least an accusation by LeapFrog of ongoing infringement by PIL or an unequivocal demand that PIL cease use of POINGO upon threat of liability, PIL necessarily lacks the "actual or imminent injury" that is required to support a declaratory relief action.  *See Holley Performance Products Inc. v. Barry Grant Inc.*, 74 USPQ 2d 1357, 1360 (N. D. Ill. 2004) (holding that defendant's letter to plaintiff, even though it contained comparisons between the defendant's patent and plaintiff's products, calculation of infringement damages, and a request for response, did not trigger an "actual controversy").

In its Amended Complaint, PIL does not, and cannot, allege that LeapFrog accused PIL of infringement or demanded that it not use, or cease use, of "POINGO."   Instead, in a transparent attempt to manufacture jurisdiction, PIL alleges that counsel's reference to "discovery" that "could" be obtained *if* there were a lawsuit is tantamount to LeapFrog's having threatened litigation.  (Amended Complaint, ¶25.)  This assertion is specious, especially in light of counsel's repeated disavowal of any intent to file suit.  (Hughes Decl., ¶7.)  Any reference to "discovery" was simply a way to underscore that the information sought by LeapFrog -- how PIL came to adopt a term LeapFrog believes it coined -- was so basic and relevant to the parties' discussions that it would be discoverable.  This Court should resist PIL's attempt to manipulate the constitutional principles articulated by *MedImmune* through such semantic gamesmanship.

### 2.    No Declaratory Jurisdiction for "Allegedly Infringing Future Uses"

The parties' dispute lacks concreteness for a further reason:  neither party has actually used POINGO on goods or services.   Under this Court's holding in *Geisha*, disputes over "allegedly infringing future uses" do not support declaratory relief jurisdiction.  In *Geisha*, this Court recently applied the *MedImmune* standard to dismiss a declaratory judgment action that had been brought prematurely to test a potential trademark issue, very much like PIL has done here.  In *Geisha*, two parties disputed the rights to use the mark "Japonais" in connection with restaurants in New York City.  The declaratory judgment plaintiff, Geisha LLC, had opened a New York restaurant called "Japonais" and sought a declaration of rights against a competitor who had announced a "firm intent" to open a restaurant by the same name and had prior intent-to-use trademark applications pending with the USPTO.  *Geisha*, 525 F. Supp. 2d at 1007-08. After discussing at length the *MedImmune* standard for jurisdiction and subsequent cases, this

Court concluded that the dispute regarding defendant's "allegedly infringing future activity lacks sufficient immediacy and reality" to warrant declaratory relief. *Id.* at 1018.

When denying jurisdiction, this Court in *Geisha* emphasized that the parties' prefiling "articulation of their respective positions with regard to trademark rights and potential infringement was less specific" than in other cases where a constitutionally required "actual controversy" had been found. *Id.* at 1017; *compare SanDisk Corp. v. STMicroelectronics, Inc.* 480 F.3d 1372, 1382 (Fed. Cir. 2007) (noting that the declaratory judgment plaintiff presented a detailed element-by-element infringement analysis by litigation experts during pre-filing negotiations). In stark contrast to a "definite" dispute, the *Geisha* parties' correspondence represented "more of a preliminary exchange of initial positions rather than the explicit analyses of patent validity and infringing products that the *SanDisk* court found sufficient to create a definite and concrete controversy." *Id.* at 1018.

PIL alleges here that PIL intends to use the mark on goods, announced a forthcoming "POINGO" product at a trade show, and has filed "intent-to-use" applications with the USPTO. (Amended Complaint, ¶¶12-13.) And as for LeapFrog's use, PIL alleges that LeapFrog decided *not* to use "POINGO" for the reader pen product, but instead called it "TAG." (Amended Complaint, ¶¶19, 22.) Accordingly, just as in *Geisha*, the trademark rights issues that PIL seeks to have adjudicated are too speculative, uncertain, and hypothetical to warrant declaratory relief.

### 3.    "Non-Misappropriation" Claim Is Devoid of Constitutionally-Required Concreteness and Definite-ness.

The request in PIL's Amended Complaint for a declaration that it did not "misappropriate" anything "confidential or proprietary" is devoid of *any* of the definite-ness or concreteness required under the Constitution. (Amended Complaint, ¶¶32-33, Prayer for Relief, ¶b.) The Amended Complaint nowhere alleges what PIL did to come up with the name POINGO -- an essential allegation if PIL is seeking a judicial declaration that its conduct was lawful. *See Williamson v. Rexam Bev. Can Co.*, 497 F. Supp. 2d 900, 911 (D.Ohio 2007) (trade secret claim sustained because it identified the "exact conduct" in which the party engaged to misappropriate such trade secret.) Moreover, though misappropriation of trade secrets is a

creation of state law,[4] PIL fails even to identify what state's law it contends is relevant to its unspecified conduct.  For all that appears in the Amended Complaint, PIL seeks a judicial declaration that whatever it did was lawful under whatever state law applies.  PIL's allegations are not sufficiently definite, concrete, and real to pass constitutional muster.

### C.    Count III Should Be Dismissed Without Leave to Amend Because PIL Does Not -- And Can Not -- Allege Required Elements of the Consumer Fraud Act.

PIL alleges that LeapFrog's requests for information about POINGO somehow constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade." (Amended Complaint, ¶ 36.)  PIL's claim fails as a matter of law because the alleged conduct was not directed towards consumers, nor was it "unfair" or "deceptive" within the meaning of The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILL. COMP. STAT 505/2 (1992) ("Consumer Fraud Act" or "Act").

### 1.    The Amended Complaint Fails to Clearly Allege, As It Must, That LeapFrog's Communications Were Published to Consumers.

The Consumer Fraud Act is a consumer protection statute.[5]  *Junction Solutions, LLC v. MBS Dev, Inc., et. al.,* 2007 U.S. Dist. LEXIS 86953, *20-21 (N.D.Ill., November 20, 2007).  If a dispute involves two business entities that are not consumers, however, the alleged conduct must involve trade practices addressed to the market generally or it must otherwise implicate consumer protection concerns.  *See Athey Products Corp. v. Harris Bank Roselle*, 89 F. 3d 430, 437 (7th Cir. 1996); *3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932,

---

[4]    *See, e.g.,* Cal. Civ. C. §3426; 765 ILCS §1065.

[5]    The Supreme Court of Illinois describes 805 ICS 505, as "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 416 (Ill. 2002).  The statute defines unfair or deceptive business practices as "including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of any trade or commerce." 815 ILL. COMP. STAT 505/2 (1992).  *See Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002) (to state consumer fraud claim, plaintiff must allege (1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and (4) the deception was the proximate cause of the claimant's injury.)

933 (N.D.Ill., 2000); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 654 N.E.2d 1109, 1116 (2d Dist., 1995).  To establish a consumer protection concern, courts generally require allegations of sharp practices designed to mislead consumers about a competitor or effects upon the public health, safety or welfare.  *Credit Ins. Consultants, Inc. v. Gerling Global Reinsurane Corp. of America*, 210 F. Supp. 2d 980, 985 (N.D. Ill. 2002).  Under this consumer nexus test, statements claimed to be deceptive or unfair must be disseminated to consumers to be actionable.  *VPI Venture Group, LLC v. Advantus Corp.*, 2006 U.S. Dist. LEXIS 10847, at *11 (N.D.Ill., March 7, 2006) (dismissing claims in part because alleged misrepresentations directed to a business in a private transaction "would appear to lack any broader bearing on the market.")

Thus, in *Junction Solutions*, this Court dismissed a counterclaim very much like the claim in PIL's Amended Complaint because, like PIL here, the plaintiff in *Junction Solutions* failed to plead that the defendant's allegedly deceptive and unfair accusations of trade secret misappropriation were directed to consumers or to the marketplace.  *Junction Solutions,* 2007 U.S. Dist. LEXIS *20-21.  According to specific allegations in the counterclaim, Junction had made its allegedly unfair trade secrets accusations in a filed lawsuit and in a letter to the claimant's potential business partner.  *Id.* at *20-21.  Neither statement, this Court concluded, "is a statement to a consumer or the marketplace in general."  *Id.* at *21.  Because the counterclaimant based its claim specifically on "inactionable statements," this Court dismissed the counterclaim, despite conclusory allegations that "Junction made misrepresentations in the marketplace."  *Id.*

PIL does not and can not allege that LeapFrog at any point discussed the issue of PIL's potential misappropriation of "POINGO" with anyone other than PIL.  To the contrary, as confirmed by the Amended Complaint and attached correspondence, LeapFrog's challenged conduct consists of communications solely with PIL's legal counsel.[6]  (Amended Complaint, Exhs. A and C.)  In light of PIL's reliance on LeapFrog's non-public correspondence and its failure to specifically allege any statements to consumers, PIL's conclusory allegations that

---

[6]    Indeed, PIL, not LeapFrog, first publicly disseminated these concerns about POINGO, by filing PIL's Complaint for Declaratory Judgment.

consumer concerns are implicated should be disregarded, as this Court did in *Junction Solutions*. *See Junction Solutions,* 2007 U.S. Dist. LEXIS at *21.

> **2.     LeapFrog's Statements and Requests about "POINGO" Do Not Constitute "Unfair Conduct" Because They Offend No Statutory Policy, Are Not Immoral, Unethical, Oppressive, or Unscrupulous, and Do Not Cause Substantial Injury to Consumers.**

Because not every business grievance may constitute an actionable wrong under the Act, courts have developed standards for measuring what type of conduct satisfies the Act's "unfairness" prong.  To determine whether business conduct is "unfair" under the Illinois Act, courts look to the following factors: (1) whether the practice offends public policy as it has been established by statutes, (2) whether it is immoral, unethical, oppressive, or unscrupulous, and (3) whether it causes substantial injury to consumers.  *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); *see also Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 2008 U.S. Dist. LEXIS 15946, *25 (N.D. Ill., Mar. 3, 2008).  A practice is unfair if it meets one of these criteria to a substantial extent, or if it meets all three to a lesser degree.  *Robinson*, 775 N.E.2d at 961.

Failure to establish application of any of the factors warrants dismissal of the complaint for failure to show a violation of the Act.  *Robinson*, 775 N.E.2d at 961.  As the Illinois Supreme has held, a plaintiff's "bare assertion of unfairness without describing in what manner [the challenged actions] either violate public policy or are oppressive is insufficient to state a cause of action."  *Id.*  Here, PIL fails to allege anything to show that LeapFrog's statements offended statutory policy; were immoral, unethical, oppressive, or unscrupulous; or caused consumers substantial injury.  PIL must do more than simply assert conduct is "unfair" to survive dismissal, and, thus, PIL's claim should be dismissed without leave to amend.[7]

---

[7]     *Compare Russian Media Group. LLC v. Cable Am., Inc.*, 2008 U.S. Dist. LEXIS 9788, at *8 (N.D. Ill., Feb. 7, 2008) (reselling pirated televisions constitutes unfair conduct because it violates public policy and is also immoral, unethical, and unscrupulous); *Pena v. Freedom Mortg. Team, Inc.*, 2007 U.S. Dist. LEXIS 79817, at *14 (N.D. Ill., Oct. 4, 2007)  (charging Hispanic and African-American loan borrowers discriminatorily high interest rates, falsifying their loan applications, and lying to them about loan terms constitute unfair conduct).

**IV.    CONCLUSION**

For the reasons set forth above, LeapFrog respectfully requests that its motion to dismiss PIL's Amended Complaint be granted.

Dated:  June 27, 2008                      Respectfully Submitted,

                                            ___/s/ Michele S. Katz_____
                                            Julie A. Katz, Esq. (Illinois Bar No. 6204541)
                                            Michele S. Katz, Esq. (Illinois Bar No. 6273985)
                                            **WELSH & KATZ, LTD.**
                                            120 S. Riverside Plaza, 22nd Floor
                                            Chicago, IL 60606
                                            Tel:       (312) 655-1500
                                            Fax:       (312) 655-1501
                                            E-mail:    jakatz@welshkatz.com

                                            Timothy R. Cahn, Esq. (*appearing pro hac vice*)
                                            **TOWNSEND AND TOWNSEND AND CREW LLP**
                                            Two Embarcadero Center, Eighth Floor
                                            San Francisco, CA  94111-3834
                                            Tel:       (415) 576-0200
                                            Fax:       (415) 576-0300
                                            Email:     trcahn@townsend.com

                                            *Attorneys for LeapFrog Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I herby certify that a true and correct copy of the foregoing LEAPFROG ENTERPRISES, INC.'S MOTION TO DISMISS FOR LACK OF DECLARATORY JUDGMENT JURISDICTION UNDER 28 U.S.C. §2201 AND FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6);  AND MEMORANDUM OF LAW IN SUPPORT was electronically filed on June 27, 2008, with the Clerk of the Court using the CM/ECF system which will send notification of such filing:

Caroline Claire Plater
Michael David Short
Kelley, Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, Illinois  60606

_____/s/ Michele S. Katz_____
One of the Attorneys for LeapFrog Enterprises, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PUBLICATIONS INTERNATIONAL, LTD., an Illinois corporation, | § § § | |
| Plaintiff, | § § | **Civil Action No. 08-CV-2800** |
| vs. | § § § | Judge Guzman |
| LEAPFROG ENTERPRISES, INC., a Delaware corporation, | § § § | Magistrate Judge Cox |
| Defendants. | § § § § | |

## DECLARATION OF JOHN A. HUGHES
## IN SUPPORT OF DEFENDANT LEAPFROG ENTERPRISES, INC.'S MOTION TO
## DISMISS FOR LACK OF DECLARATORY JURISDICTION

I, John A. Hughes, declare as follows:

1.     I am an attorney in the law firm of Townsend and Townsend and Crew, duly licensed to practice in the State of California.  I am counsel to Defendant LeapFrog Enterprises, Inc. ("LeapFrog"). I have personal knowledge of the matters stated in this declaration, unless otherwise indicated, and if called upon to testify, could and would competently testify hereto.

2.     Based on my review of documents filed with the United States Patent and Trademark Office ("USPTO"), in March 2008, Plaintiff Publications International, Ltd. ("PIL") filed two intent-to-use trademark applications for the mark "POINGO."  According to the USPTO records, neither of these applications has yet been examined.  True and correct copies of the online filing and USPTO records for these applications are attached hereto in Exhibit A.

3.     After learning of PIL's announced intention to use "POINGO," I drafted and sent a letter dated April 7, 2008, informing PIL that LeapFrog had adopted and had been using the POINGO mark for its own anticipated reading pen product and that "PIL's decision to use the same mark may be due to PIL's misappropriation of LeapFrog's confidential and proprietary information."  (*See* Exhibit A to Complaint)  I requested that PIL provide LeapFrog with an

explanation as to how PIL chose the mark POINGO for its own reading pen product, "in order to determine whether PIL's use of the mark POINGO resulted from such a misappropriation." (*See id.*)

4.    On or about April 14, 2008, I received a letter faxed from Dorothy M. Weber, intellectual property counsel to PIL. (*See* Exhibit B to Complaint). The letter requested that LeapFrog supply evidence that it had used the term "POINGO." The letter did not respond directly to my request for an explanation as to how PIL chose "POINGO" for its own reading pen product.

5.    On or about April 17, 2008, I responded to PIL's letter of April 14. (See Exhibit C to Complaint). I advised PIL that the mark "POINGO" was included in a presentation to one of LeapFrog's retailers at least as early as November 14, 2006, that LeapFrog had used the mark internally prior to November 14, 2006, and that "PIL's decision to use the exact same mark may be due to PIL's misappropriation of LeapFrog's confidential and proprietary information." (*See id.*) I reiterated LeapFrog's request that PIL explain how it chose to use the mark "POINGO" for its reading pen product, and asked that PIL assure LeapFrog that PIL's selection of the mark "POINGO" did not result from misappropriation of LeapFrog's confidential and proprietary information. (*See id.*)

6.    In a letter dated April 30, 2008, PIL's new counsel William R. Golden, Jr., asked to schedule a telephone conference "to clarify the issues raised" in the parties' correspondence. A true and correct copy of Mr Golden's April 30 letter is attached hereto in Exhibit B.

7.    Thus, at PIL's invitation, on or about May 7, 2008, counsel to both parties engaged in a telephone conference to discuss their mutual investigation of the matter. I again asked PIL for an explanation as to the origin of its selection of the mark "POINGO" for PIL's reading pen product. In the course of that lengthy conversation, I noted a few times that such information was so basic that it was the kind of information that would be discoverable, but in each instance, as part of that statement, I emphasized that LeapFrog had no interest nor intention to initiate litigation, and instead hoped that PIL would voluntarily provide an explanation as to its

source of the mark "POINGO." PIL's attorneys stated they would confer with their client and then respond to me. I never received a response from PIL as promised in the May 7, 2008 phone call.

8.      At no time during these communications did I ever threaten litigation, charge PIL with infringement, demand monetary damages, demand that PIL not use "POINGO," or even assert that PIL did in fact misappropriate the term "POINGO." All of our discussions were directed at investigating PIL's adoption and intended use of "POINGO," in light of the highly suspicious circumstances of PIL adopting the same term that LeapFrog had previously coined for a similar product.

9.      According to court records, on or about May 14, 2008, PIL filed the "Complaint for Declaratory Judgment" in the Northern District of Illinois.

10.     On or about May 28, 2008, I drafted and sent a letter to PIL recounting the facts relating to the parties' prior communications. A true and correct copy of my May 28 letter is attached hereto as Exhibit C. I reiterated that in the May 7, 2008 phone conference with PIL's attorneys, I repeatedly informed counsel for PIL that LeapFrog did not wish to litigate the matter. I also informed PIL that no declaratory judgment jurisdiction existed and requested that PIL voluntarily dismiss the complaint. I noted in that letter that if PIL did not voluntarily dismiss the complaint, LeapFrog would timely file a Motion to Dismiss based on the lack of an immediate and real controversy. PIL did not respond to this letter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13th day of June, 2008, at San Francisco, California.

_____
John A. Hughes

# EXHIBIT A

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2008-06-16 13:56:30 ET

**Serial Number:** 77424039 <u>Assignment Information</u>    <u>Trademark Document Retrieval</u>

**Registration Number:** (NOT AVAILABLE)

**Mark**

# POINGO

**(words only):** POINGO

**Standard Character claim:** Yes

**Current Status:** Newly filed application, not yet assigned to an examining attorney.

**Date of Status:** 2008-03-21

**Filing Date:** 2008-03-17

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 042 -New Application Processing

**Date In Location:** 2008-03-21

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Publications International, Ltd.

**Address:**
Publications International, Ltd.
7373 N. Cicero Avenue

Lincolnwood, IL 60712
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

---

**International Class:** 016
**Class Status:** Active
Specially printed books, for use alone or with a handheld electronic reader device that enhances viewing of the books through audio means
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-03-20 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Dorothy M. Weber

**Correspondent**
DOROTHY M. WEBER
SHUKAT ARROW HAFER WEBER & HERBSMAN, LLP
111 W 57TH ST STE 1120
NEW YORK, NY 10019-2227
Phone Number: 212-245-4580
Fax Number: 212-956-6471

---

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2008-06-16 13:56:00 ET

**Serial Number:** 77424045 <u>Assignment Information</u>          <u>Trademark Document Retrieval</u>

**Registration Number:** (NOT AVAILABLE)

**Mark**

# POINGO

**(words only):** POINGO

**Standard Character claim:** Yes

**Current Status:** Newly filed application, not yet assigned to an examining attorney.

**Date of Status:** 2008-03-21

**Filing Date:** 2008-03-17

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 042 -New Application Processing

**Date In Location:** 2008-03-21

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Publications International, Ltd.

**Address:**
Publications International, Ltd.
7373 N. Cicero Avenue

Lincolnwood, IL 60712
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

---

**International Class:** 009
**Class Status:** Active
Optical reader technology consisting of a handheld electronic reader device, specially printed books and proprietary software and data
**Basis:** 1(b)
**First Use Date:** (DATE NOT AVAILABLE)
**First Use in Commerce Date:** (DATE NOT AVAILABLE)

---

## ADDITIONAL INFORMATION

---

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-03-20 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

---

**Attorney of Record**
Dorothy M. Weber

**Correspondent**
DOROTHY M. WEBER
SHUKAT ARROW HAFER WEBER & HERBSMAN, LLP
111 W 57TH ST STE 1120
NEW YORK, NY 10019-2227
Phone Number: 212-245-4580
Fax Number: 212-956-6471

---

# EXHIBIT B

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**
———
(212) 808-7800

WASHINGTON, DC

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ
———
BRUSSELS, BELGIUM
———
AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

April 30, 2008

**VIA FACSIMILE (415) 576-0300 AND EMAIL**

John A. Hughes, Esq.
Townsend and Townsend and Crew, LLP
Two Embarcadero Center, 8th Floor
San Francisco, California 94111-3834

Re:    **POINGO**

Dear Mr. Hughes:

Please be advised that we have been retained by Publications International Ltd. as co-counsel to Shukat Arrow Weber & Herbsman, LLP in the above-referenced matter. In order to clarify the issues raised in your correspondence to date with Dorothy M. Weber, Esq., she and I would like to schedule a telephone conference with you this week or early next week.

We look forward to hearing from you.

Sincerely,

William R. Golden, Jr.

cc:    Dorothy M. Weber, Esq. (Via Email)

# EXHIBIT C

TOWNSEND
*and*
TOWNSEND
*and*
CREW
L.L.P.

San Francisco

Two Embarcadero Center
Eighth Floor
San Francisco, California 94111-3834
Tel 415.576.0200
Fax 415.576.0300

May 28, 2008

*VIA EMAIL TO <dorothy@musiclaw.com>*
*CONFIRMING COPY TO FOLLOW*

Dorothy M. Weber, Esq.
SHUKAT ARROW HAFER WEBER &
  HERBSMAN, LLP
111 West 57th Street
New York, NY  10019

*VIA EMAIL TO <wgolden@kelleydrye.com>*
*CONFIRMING COPY TO FOLLOW*

William R. Golden, Jr.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178

Re:    Publications International, Ltd. v. LeapFrog Enterprises, Inc.
       *IMPROPER FILING OF DECLARATORY JUDGMENT ACTION*
       Our File No. 025412-007700

Dear Ms. Weber and Mr. Golden:

Thank you for sending me a courtesy copy of the Declaratory Judgment
Complaint PIL has filed in the Northern District of Illinois against LeapFrog regarding
the parties' use of and the origin of PIL's selection of the mark **POINGO**.  We were very
surprised to learn of PIL's unfounded filing.

The Illinois Court has no jurisdiction to hear PIL's "claims" because the parties'
discussions plainly do not constitute an actual controversy that is "definite and concrete,"
"real and substantial," and "of sufficient immediacy and reality to warrant the issuance of
a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct.
764, 771 (2007).  Correspondence and phone conversations requesting information to
investigate suspicious-seeming circumstances do not create federal jurisdiction. *Holley
Performance Products, Inc. v. Barry Grant, Inc.*, 74 U.S.P.Q.2d 1357, 1360(N.D.Ill.
2004) (requests that a putative infringer "investigate" the issue of infringement did not
create a justiciable controversy).  Under Seventh Circuit law, an IP owner has "the
privilege of making a fair investigation" of possible infringement "without calling down
on his head the undertaking of a defense of an expensive and burdensome declaratory

TOWNSEND
*and*
TOWNSEND
*and*
CREW

Dorothy M. Weber
William R. Golden, Jr.
May 28, 2008
Page 2

judgment suit." *See, e.g., American Needle and Novelty Co.*, 379 F.2d 376, 379 (7th Cir. 1967). Given that there was no "definite," "concrete," and "immediate" controversy or threat of suit here, PIL's filing the Declaratory Judgment Complaint was unwarranted and improper. *See, Crown Drug Co., Inc. and Bolar Pharmaceutical Co., Inc. v Revlon, Inc., USV Pharaceutical Corp. and USV Laboratories, Inc.*, 703 F. 2d 240 (7th Cir. 1983) (dismissal of Declaratory Judgment Complaint in trademark infringement and deceptive business practice action affirmed despite prefiling discussions of legal claims).

In an apparent attempt to manufacture jurisdiction under *MedImmune*, PIL's Complaint misrepresents that I "threatened litigation" in our May 7, 2008 telephone conference regarding this matter. As I trust you are actually aware, contrary to PIL's allegations, I made no threat of LeapFrog initiating litigation in this matter - in fact the opposite. As you know, I repeatedly informed you in our telephone conference that LeapFrog did *not* wish to litigate the matter (emphasis in each of my statements of that fact). Your omission of that material fact in the Complaint could be considered misleading to the court. Regardless, however, the essential basis of the allegation - an observation that requested information would be discoverable - is clearly *not* sufficient to support a Declaratory Judgment action. *See, Crown Drug Co., Inc., supra.* We therefore demand that the Complaint be voluntarily dismissed immediately.

In my correspondence and our telephone conference, I asked for PIL to voluntarily provide information that could demonstrate whether or not it based its selection of the mark **POINGO** on confidential information misappropriated from LeapFrog. At the close of our telephone conference, you informed me you would make inquiries with your client on that issue, and then contact me (even if only to inform me that no such voluntary disclosure would be made). Instead, PIL filed the Declaratory Judgment action. Thus, it is *PIL* that has attempted to create the appearance of a justiciable dispute in this matter, in its refusal to voluntarily provide the requested information. LeapFrog never made any explicit or implied threat of suit.

Thus, if the Complaint is not voluntarily dismissed, we will timely file a Motion to Dismiss, based on the lack of an immediate and real controversy. Moreover, even if there was subject matter jurisdiction for a Declaratory Judgment claim, the proper venue would be the Northern District of California, *not* the Northern District of Illinois. Thus, in the very unlikely event that the case is not dismissed outright, it will certainly be transferred.

Although LeapFrog would not have initiated litigation in this matter, since PIL has done so, PIL now *is* obligated under discovery rules to provide all relevant information regarding the origin of its selection of the mark **POINGO**. Litigation counsel, Tim Cahn, will contact you shortly to arrange the Rule 26(f) discovery conference.

TOWNSEND
*and*
TOWNSEND
*and*
CREW

      Despite PIL's decision to submit this matter to the courts for adjudication, LeapFrog remains willing to pursue an amicable resolution of the issues involved, particularly before the parties expend the considerable resources that will be necessary to litigate the matter.  Please contact me immediately if PIL is also willing to enter such discussions.

Very truly yours,

John A. Hughes

Cc:  Timothy R. Cahn, Esq.

61382522 v1