**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PUBLICATIONS INTERNATIONAL, LTD., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | 08 C 2800 |
| v. | ) ) | Judge Ronald A. Guzmán |
| LEAPFROG ENTERPRISES, INC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Publications International, Ltd. ("PIL") has sued LeapFrog Enterprises, Inc. for declaratory relief on a federal trademark claim, and declaratory, injunctive and monetary relief on two state law claims. The case is before the Court on LeapFrog's motion to dismiss all of the claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).[1] For the reasons provided below, the Court grants the motion.

**Facts**

In February 2008, PIL introduced its "POINGO" pen reader, "a pen-like electronic . . . device" that can read microscopic codes in specially-made books, at the American International Toy Fair. (Am. Compl. ¶¶ 11-12.) PIL has filed two intent-to-use trademark applications with the United States Patent and Trademark Office ("PTO") to register the POINGO mark for use in connection with its pen reader system. (*Id.* ¶ 13.)

---

[1] Alternatively, LeapFrog seeks dismissal under Rule 12(b)(6). Because the Court concludes jurisdiction is lacking, the merits arguments are moot.

On April 7, 2008, LeapFrog's counsel sent a letter to PIL's president that said:

It has come to our attention that [PIL] intends to launch a reading pen product under the mark POINGO in August, 2008. . . .

Please be advised that long before PIL announced the launch of its reading pen product, LeapFrog was using the mark POINGO for its own reader pen both internally and in presentations to retailers. As a result, LeapFrog has priority rights to the use of the mark POINGO.

Furthermore, LeapFrog's long prior use of the coined mark POINGO within LeapFrog indicates that PIL's decision to use the same mark may be due to PIL's misappropriation of LeapFrog's confidential and proprietary information. Therefore, in order to determine whether PIL's use of the mark POINGO resulted from such a misappropriation, we request that you provide us with an explanation as to how PIL chose the mark POINGO for its pen reading product.

(*Id.*, Ex. A, Letter from Hughes to Maddrell of 4/7/08.)

On April 14, 2008, PIL's counsel responded as follows:

[Y]ou assert that LeapFrog has priority on the use of the mark POINGO, [but] you have not provided any information on your claimed date of first use. Neither . . . Leapfrog's website nor any search of the internet reveals any use by LeapFrog of the phrase POINGO or any mark even similar to such phrase. . . . [Y]our client's website reveals an optic pen children's book product under the trademark "TAG", [but] no where in the description of the TAG product is the phrase POINGO referenced.

. . . .

We ask, therefore, that you immediately provide us with any information which confirms a date of the purported adoption by your client of the mark POINGO, particularly any materials which you claim were shown to third parties.

(*Id.*, Ex. B, Letter from Weber to Hughes of 4/14/08.)

Subsequently, LeapFrog told PIL that it had used "the mark POINGO . . . in a presentation to one of LeapFrog's retailers at least as early as November 14, 2006" and had "used the mark internally prior to that date." (*Id.*, Ex. C, Letter from Hughes to Weber of 4/17/08.) LeapFrog also repeated its request for an explanation "as to how and when PIL chose the mark POINGO, in order

2

to assure LeapFrog that PIL's use of the mark did not result from any . . . misappropriation." (*Id.*)

On May 7, 2008, LeapFrog's counsel reiterated its demand that PIL explain how it chose the POINGO mark and told PIL that if it refused to do so, LeapFrog could get the information through litigation. (*Id.* ¶ 25.)

On June 10, 2008, LeapFrog announced that its "TAG" pen reader system was available for sale. (*See* http://www.leapfrog.com/en/home/about_us/press_room.htmlLeapFrog (follow "June 10, [2008] Tag You're It: LeapFrog's New Reading System Is Now Available" hyperlink).

To date, LeapFrog has neither released a product called POINGO into the marketplace nor filed any applications with the PTO to register that mark. (Am. Compl. ¶ 22.)

## Discussion

There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6) motions; that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002). However, in factual attacks, like this one, the Court may consider affidavits and other evidence in deciding the motion. *Id.* In either case, the burden of proving that jurisdiction exists rests with the plaintiff. *Id.*

The Court may entertain a suit for declaratory relief only if "the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v.*

3

*Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (quotation omitted). "A useful question to ask in determining whether a[] [substantial] controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). If the answer is "none," then "any adverse economic interest . . . the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Id.* (quotation omitted). Plaintiff has the burden of "establish[ing] that [declaratory judgment] jurisdiction existed at the time the claim . . . was filed and . . . has continued since." *Id.*

Plaintiff contends that its commercial launch of its POINGO products coupled with LeapFrog's threats to sue establish that the parties' dispute over the mark is concrete enough to merit declaratory relief. The Court disagrees.

LeapFrog can sue PIL for trademark infringement only if LeapFrog has a protectable right in the POINGO mark. *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999). LeapFrog has such a right only if it: (1) has used the mark on a product "sold or transported . . . in commerce" such that the public identifies the product as LeapFrog's; or (2) "has a bona fide intention to use [the mark] in commerce" and has applied to register it with the PTO. 15 U.S.C. § 1127 ("Lanham Act").

PIL has not alleged that LeapFrog used POINGO in commerce within the meaning of the Lanham Act. On the contrary, PIL asserts, and LeapFrog admits, that LeapFrog: (1) used POINGO in connection with a pen reader product in a single presentation to one retailer in November 2006; (2) never marketed or sold a pen reader product under that name; and (3) never applied to the PTO to register that mark. (Am. Compl. ¶ 22; *id.*, Ex. B, Letter from Weber to Hughes of 4/14/08; *id.*,

4

Ex. C, Letter from Hughes to Weber of 4/17/08.) Because PIL has not alleged that LeapFrog has trademark rights in POINGO, any dispute the parties may have over that mark is not concrete or immediate enough to warrant declaratory relief.

Moreover, even if LeapFrog had acquired rights in POINGO, it could retain them only by continuously using the mark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954-55 (7th Cir. 1992); *see* 15 U.S.C. § 1127 (stating that a mark is deemed abandoned if "its use has been discontinued with intent not to resume such use"). PIL does not allege that LeapFrog continuously used POINGO. On the contrary, PIL alleges that LeapFrog never used POINGO after November 2006, and used an entirely different mark, TAG, for the pen reader product it ultimately released. (Am. Compl. ¶¶ 19, 22; *id.*, Ex. B, Letter from Weber to Hughes of 4/14/08; LeapFrog's Mot. Dismiss at 3); *see* http://www.leapfrog.com/en/home/about_us/press_room.htmlLeapFrog (follow "June 10, [2008] Tag You're It: LeapFrog's New Reading System Is Now Available" hyperlink) (announcing that LeapFrog's TAG system was available for sale). Thus, even if LeapFrog had acquired rights in POINGO, PIL's allegation that LeapFrog stopped using the mark after November 2006 would still bar its claim for declaratory relief.

In short, because plaintiff has not alleged that LeapFrog obtained or retained trademark rights in POINGO, it has not established that there "is a substantial controversy . . . of sufficient immediacy" concerning its rights in that mark to warrant declaratory relief. *MedImmune*, 127 S. Ct. at 771. Therefore, the Court grants LeapFrog's motion to dismiss plaintiff's trademark claim for declaratory relief.

Plaintiff's remaining claims are grounded in the Illinois statutes that prohibit trade secret misappropriation and deceptive business practices. Because the Court has dismissed the only federal

5

claim in this suit, it will not exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 691-92 (7th Cir. 1995) (noting that the Declaratory Judgment Act is not an independent source of subject matter jurisdiction). Thus, unless there is some other basis for jurisdiction, these claims will also be dismissed.

The other basis for jurisdiction that plaintiff urges is diversity. But the amended complaint does not support the inference that the amount in controversy in the state claims meets the threshold for such jurisdiction. *See* 28 U.S.C. § 1332(a) (setting forth jurisdictional requirements). On the contrary, plaintiff alleges that it launched its POINGO product in spite of LeapFrog's actions (*id.* ¶ 29), and does not allege that those actions increased plaintiff's POINGO-related costs, decreased its sales or otherwise cost it *any* money, let alone in excess of $75,000.00. Because the amended complaint provides no basis for inferring that plaintiff meets the requirements for invoking the Court's diversity jurisdiction, the state law claims must also be dismissed.

## Conclusion

For the reasons set forth above, the Court grants LeapFrog's Rule 12(b)(1) motion to dismiss PIL's amended complaint [doc. no. 27]. PIL has fourteen days from the date of this Memorandum Opinion and Order to amend its state law claims to invoke the Court's diversity jurisdiction. If plaintiff fails to amend its complaint in that period, this case will be terminated.

**SO ORDERED.**    **ENTERED:**

**December 4, 2008**

*[signature: Ronald A. Guzman]*

—————————————————
**HON. RONALD A. GUZMAN**
**United States District Judge**